**GAERTNER v. STOLLE. (No. 7970.)***

(Court of Civil Appeals of Texas. Galveston. Feb. 3, 1921. Rehearing Denied Oct. 13, 1921. On Second Motion for Rehearing, Jan. 26, 1922.)

1. Trial ⬦351(5)—Requested special instruction on evidentiary matter incident to issue properly refused in view of instruction submitted.

In an action for diverting the natural flow of water and impounding it on plaintiff's land, where the court had submitted instructions on the decisive and controlling issue, held not error to refuse request for findings upon evidentiary facts incidental to the material issue embraced in the submitted instruction.

2. Trial ⬦352(4)—No error in refusing special issue not supported by evidence.

Where there had been no evidence introduced authorizing the submission of an issue,

refusing a special issue relating thereto was not error.

3. Waters and water courses ⬦171(1)—Damages from levees arresting natural flow and impounding waters recoverable only after Drainage Act 1915.

In an action for diverting the natural flow of water and impounding it on plaintiff's land by construction or repairs to levees, plaintiff is restricted to damages after the passage of Acts 34th Leg. (1915) 1st Called Sess. c. 7 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t).

4. Constitutional law ⬦188—Drainage Act 1915 in so far as it interferes with vested rights is retroactive and invalid.

Acts 34th Leg. (1915) 1st Called Sess. c. 7 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), providing that hereafter it shall be unlawful for any person to divert the natural flow of surface water or to permit a diversion thereof caused by him to continue, in so far as the act sought to compel one who had heretofore constructed a levee, in which he had a vested property to remove the same, was retroactive and violated Const. art. 1, § 16, as retroactive.

5. Appeal and error ⬦1056(4)—Jury finding defendant not at fault, exclusion of testimony of damage from standing water not error.

In an action for diverting the natural flow of water and impounding it on plaintiff's land, as the jury found that defendant's levees did not divert the flow of surface water on defendant's land or impound it, plaintiff was not entitled to damages; the exclusion of testimony of witnesses tending to show damage by standing water was not error.

6. Judgment ⬦256(2)—Refusal to require removal of levees constructed prior to drainage act not error.

In an action for diverting the natural flow of water and impounding it on plaintiff's land, refusal to require defendant to remove levees constructed prior to Drainage Act 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), was not error; the jury finding that the levees did not divert surface water.

7. New trial ⬦128(4)—No error in court's refusal to inquire whether jurors understood an instruction that was not misleading.

Where error was assigned that the jury did not understand an instruction based only on plaintiff's information and belief and no misconduct charged under Vernon's Sayles' Ann. Civ. St. 1914, art. 2021, it was not error for the court to refuse to enter into an inquiry as to whether the jurors understood the instruction, where there was nothing in the instruction that could have misled.

8. Costs ⬦61—Error to award costs against plaintiff practically successful in his action.

Where the plaintiff in an action was successful in part, it was error to award the entire costs against him.

9. Appeal and error ⬦1152—Judgment charging all costs against party successful in part reformed.

Where plaintiff was successful in securing a small portion of the relief prayed, the judg-

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Appellee's application for writ of error refused March 8, 1922. Appellant's application for writ of error refused April 5, 1922.

ment awarding all costs against him will be reformed on appeal so as to apportion the costs.

### On Second Motion for Rehearing.

**10. Appeal and error ⊕〰832(4)—Judgment contrary to verdict set aside at any stage of appeal.**

Where a judgment is contrary to the verdict, the error in rendering it is fundamental and apparent of record and should be set aside even on second motion for rehearing.

**11. Trial ⊕〰365(1)—Finding of jury on issue held not to conflict with finding of court from admissions of pleadings and evidence.**

Where the only issue submitted to the jury was whether a levee erected by defendant diverted surface water, and the jury answered, "No," but defendant by pleadings and evidence admitted that he extended the levee 20 to 25 feet, there was no issue to be submitted on the extension; the finding of the jury can only be construed in regard to the original levee and in no way conflicted with the court's finding that the extension should be removed.

Lane, J., dissenting.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Suit by Frank Gaertner against Gerhard Stolle. After hearing temporary injunction dissolved, and, from judgment for defendant, plaintiff appeals. Reformed and affirmed.

John P. Ehlinger and John T. Duncan, both of La Grange, for appellant.

C. D. Krause, of La Grange, for appellee.

LANE, J. This suit was brought by appellant, Frank Gaertner, on the 8th day of September, 1919, against appellee, Gerhard Stolle, to recover damages and for an injunction.

The substance of plaintiff's petition material to the questions involved in this appeal is as follows:

That during the year 1911, and at a time when it was lawful so to do, defendant Stolle constructed a levee on the common boundary line between his land and the land of plaintiff for a distance of nearly 700 to 1,000 varas for the purpose of diverting and arresting the natural flow of the surface water from plaintiff's land onto and across defendant's land; that said levee does so obstruct the flow of such surface water and impounds the same on plaintiff's land; that said levee was maintained ever since it was constructed by defendant by making repairs thereon, to plaintiff's damage in the sum of $2,000; that the maintenance of said levee during the year 1919 damaged him in the sum of $2,000; that on the 29th day of May, 1915, the Legislature of Texas passed an act by which it was provided as follows:

"That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said waters so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby." Acts 34th Leg. (1st Called Sess.) c. 7 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t).

That said act became effective and in force on the 26th day of August, 1915, and that after said date the defendant had no right to keep, maintain, or erect any levee or obstruction which would divert the natural flow of the surface water falling upon plaintiff's land or lands above plaintiff or to impound such surface water on the lands of plaintiff which had a natural flowage from plaintiff's land onto the defendant's land and into the Colorado river and thereby causing damage, harm, and inconvenience to this plaintiff.

He further pleaded that after the passage of the act above referred to, and after the same took effect, defendant at various times repaired the levee theretofore constructed by him so as to impound said surface water on plaintiff's land, and that in the year 1918 defendant erected in front of and below the tenant house of plaintiff a levee of about 25 yards in length, same being an extension of the original levee theretofore made which obstructed and impounded the surface water in front of and under said tenant house to such an extent as to render said house almost uninhabitable, to the great inconvenience and damage to plaintiff's tenant.

He also pleaded that there is a road which runs across defendant's land and which has been used by tenants on plaintiff's and adjoining lands in going to and from the town of Ellinger and to the public road for over 30 years; that the right of the owners of the land now owned by plaintiff, and other farms adjoining same, to the use of said road as a roadway and road of necessity, has been recognized and allowed for 30 years, and that if defendant were to close it up plaintiff's land would be greatly damaged as well as the lands of adjoining owners; that defendant is threatening to close said road. He further alleged that all of said acts and threats were maliciously done and made for the purpose of injuring plaintiff. His prayer was for a writ of injunction commanding defendant to remove the levees constructed by him or such portions thereof as will not interfere with the natural flow of the surface water off of plaintiff's land and across defendant's land, and that defendant be enjoined

from closing the road through his premises so as to prevent persons from traveling same across defendant's land, and that he have judgment for his actual and punitory damages as prayed for and for all costs of suit, and for general relief.

The court granted a temporary injunction as prayed for upon the petition without a hearing. Thereafter defendant filed his answer, in which he says:

"(1) That he denies generally each and every material allegation in plaintiff's original petition contained except such as are hereinafter admitted, and demands strict proof, and of this he puts himself upon the country.

"(2) That he denies having made or constructed any levees as alleged in plaintiff's original petition, but admits that in the fall of the year 1909 he did throw up, with a plow and a disc plow, dirt or the soil along the fence lines between the lands of plaintiff, J. H. Wessels and other adjoining owners and himself, but expressly denies that same hold back, or impound any water on the plaintiff's land or injure or damage plaintiff in any way, and he says that during the fall of 1918, with full understanding and acquiescence on the part of plaintiff by plaintiff telling him he could do so on his own (defendant's) land, he, defendant, did extend such work, by plowing up dirt and soil for a distance of about 24 yards at or near plaintiff's tenant house, and from the end thereof he dug a ditch leading into or to a slough or lake, and he expressly denies that any of this work holds back or impounds water on plaintiff's land or in any way injures or damages him or his land. * * *

"(4) He says that if plaintiff is seeking to recover any damage to his land, or for depreciation of the value of his land, then in any event such cause of action accrued to plaintiff more than two years prior to the filing of this suit, and defendant pleads the two years' statute of limitation in bar of any recovery on account thereof.

"(5) He denies that plaintiff or any other person has any right to or in the roadway mentioned in plaintiff's original petition, and that plaintiff and such persons were using such roadway only and solely by permission and license granted by defendant, and revocable at his will and pleasure, and which permission and license defendant has revoked and now does withdraw from plaintiff and revoke.

"Wherefore defendant prays that the injunction herein granted be dissolved, vacated, and set aside, and he be permitted to replace the dirt and soil or elevation made between the lands of himself and plaintiff and Wessels and other adjoining owners as same were before said injunction was granted, that the free and uncontrolled right to and possession of the roadway be restored to him and he be permitted to do therewith as he pleases, and that said injunction be not perpetuated and that plaintiff be not permitted to recover of him any damages, nor any right to nor in defendant's land, nor in the roadway thereover, and that plaintiff be not permitted to recover anything of any nature whatsoever of this defendant, nor awarded any relief whatever against this defendant, and that defendant be discharged and permitted to go hence without day and recover upon his cross-action against plaintiff and his bondsmen hereinafter set out, and that he, defendant, have all such other and further relief, general and special, that he may show himself entitled to and so he will ever pray."

Defendant also filed his cross-bill, the contents of which will not be stated, as it is not necessary to a disposal of the issues presented by this appeal.

Plaintiff filed his supplemental petition denying the allegations of defendant's answer and repeating the material allegations of his original petition.

The cause was submitted to a jury upon special issues. In answer to the first two issues the jury found that the defendant Stolle had sustained no damages by reason of the issuance and service of the temporary injunction upon him.

In answer to special issue No. 3, they found that the levee constructed by Stolle, near appellant's tenant house, since the 26th day of August, 1915, was about 25 yards in length.

To special issue No. 4, "Does the levee that was thrown up by the defendant between his land and that of the plaintiff divert the natural flow of surface water over the land of plaintiff and impound water on plaintiff's land?" the jury answered, "No."

The verdict of the jury was received and approved by the court, and thereupon judgment was rendered substantially as follows:

"After hearing the pleadings read, and the introduction of the evidence, the court being of opinion that plaintiff has wholly failed to show himself entitled to the roadway mentioned and described in his petition, or to any easement therein or right thereto, and has also failed to show himself entitled to any damages whatever. * * *

"After due consideration, the court is of opinion that said verdict of the jury is correct, and therefore, accordingly, on this, the 1st day of December, 1919, approves and makes said verdict the basis of this judgment:

"It is therefore considered, ordered, adjudged, and decreed by the court that defendant, Gerhard Stolle, do not recover of plaintiff, Frank Gaertner, anything by reason of his cross-action in this suit.

"And it is further ordered, adjudged, and decreed by the court that the injunction heretofore, on the 5th day of September, 1919, granted in this case, be and the same is hereby forever dissolved, and it is ordered, adjudged, and decreed by the court that plaintiff, Frank Gaertner, do not recover of defendant, Gerhard Stolle, anything, but that the defendant, Gerhard Stolle, do have and recover of and from plaintiff, Frank Gaertner, all costs by him in this behalf expended, for which he may have his execution, and that the defendant, Gerhard Stolle, may replace the levees and fill the gaps and openings made by him under the orders of the court, except the 25 yards at the west end thereof, constructed and added to said levee in the fall of 1918, and which 25 yards, or so much thereof as has not already been removed and leveled with the surface of

the ground, he, defendant Gerhard Stolle, is now hereby ordered and directed to remove and level with the ground and not to thereafter reconstruct."

From this judgment plaintiff, Gaertner, has appealed.

By assignments 1 to 13, inclusive, complaint is made of the refusal of the court to submit 13 special issues requested by appellant.

[1] The court was not in error in refusing to submit any of the special charges requested by appellant. In our opinion the court had submitted the decisive and controlling issue in this case, which was whether or not the dirt thrown up or plowed up by appellee (denominated levee) between his land and that of appellant diverted the natural flow of the surface water over appellant's lands and impounded water on appellant's land. This issue was squarely and fairly submitted to the jury in question 4 in the court's charge, reading, "Does the levee that was thrown up by the defendant between his land and that of the plaintiff divert the natural flow of the surface water on appellant's land?" and which the jury answered in the negative, "No." The inquiries sought to be made by appellant, and refusal of which is complained of in the first to thirteenth assignments, inclusive, involve merely findings upon evidentiary facts or issues merely incidental to the material issue embraced in question 4, above set out, which controlled the controversy, and by which the case had to be determined. All of those inquiries related to mere matters of evidence bearing upon the controlling issue to be determined by the jury, and were therefore properly refused. Varn v. Moeller, 216 S. W. 234.

A multiplicity of questions should not be submitted to the jury to be answered separately as on special issues, and findings of merely evidential facts should never be required. Cushman v. Masterson, 64 S. W. 1031. The true function of special issues is to elicit the material and controlling facts established by the evidence, and not the evidence by which they are established. Haile v. Johnson, 63 Tex. Civ. App. 199, 133 S. W. 1088.

[2] Appellant requested the court to submit to the jury his special charge No. 14, reading as follows:

"Has the roadway across the defendant Stolle's land been in use for a number of years as a necessary inlet and outlet from plaintiff's land to the regular public road and to the market? And how long has the same been so in use?

"You will answer this question yes or no, and if you should answer it yes, then you will add the number of years it has so been used."

The court refused such request, and appellant has made such refusal the grounds for his fourteenth assignment.

The court did not err in refusing this special charge. There was no evidence authorizing the submission of any such charge, and it was therefore properly refused.

By the fifteenth assignment complaint is made of the refusal of the court to set aside the answer of the jury to special issue No. 4 hereinbefore set out. It is insisted that there is no evidence to support such answer.

To this contention we are unable to agree. We think the jury's answer was sustained by ample evidence.

[3] Appellant, Gaertner, offered to prove by A. B. Bradshaw and several others that water was diverted by the levee, alleged to have been constructed by appellee in 1911, prior to the passage of the act of 1915, and impounded it on appellant's land, and that by reason thereof appellant was damaged in the sum of $2,000. Upon objection of counsel for appellee that the proposed testimony was being tendered to prove that the water in question was impounded by a levee which was constructed in 1911, prior to the passage of the act of 1915, and at a time when it was lawful to construct the same, the court sustained such objection, holding that appellant could recover, if at all, only for such damage as was caused by such repairs made on the levee by appellee since the passage of the act of 1915 and such new levee as had been constructed since the passage of said act. Appellant has made the act of the court in rejecting such proffered testimony the grounds of his sixteenth and seventeenth assignments of error. In approving the bills of exception taken to his action in rejecting such testimony, the court made the following qualification:

"The foregoing bill is approved with the following qualification: Plaintiff was by said testimony seeking to prove up damages to his land by a levee that was thrown up prior to the time the surface water statute was enacted and went into effect on August 25, 1915."

It is apparent that the court restricted the appellant to proof of damages to him, if any, caused by the construction of new levees and repairs to those already made, since it became unlawful to construct and maintain levees, for the purpose of preventing surface water from flowing upon the lands of appellee. We think the holding of the court was correct. That an owner of land in this state had at all times, prior to the act of 1915, the right to construct levees to prevent more surface water from flowing from his neighbor's land upon his land, is unquestioned. Necessarily this right has become a rule of property and of right respecting interests which have vested during a long period of time, and it cannot now be disturbed without manifest injustice to those who have acted upon the faith of the law as it existed at the time of the act complained of.

[4] We have reached the conclusion that, in so far as the act of the Legislature of 1915 sought to compel one who had theretofore lawfully constructed a levee, in which he had a vested right as property, to remove the same, it was retroactive and violative of the provisions of article 1, § 16, of the Constitution, which provides that—

"No bill of attainder, ex post facto law, retroactive law, or any other law impairing the obligation of contracts, shall be made."

The levee constructed by appellee in 1911 was lawfully constructed on his own land. It became and was his lawfully acquired property, and served to protect and probably enhance the value of his land; and the Legislature was without authority to provide for its destruction for the benefit of appellant or any other individual. We therefore think that in so far as the act of 1915 provides for the removal or destruction of levees lawfully constructed on one's own premises, prior to the passage of said act, it is void and unenforceable. Property of the citizen in this state cannot thus be taken, even though it be for the use of the public.

We think all the established rules of law in this state, constitutional and otherwise, prohibit, and ought to prohibit, the taking or destruction of the private property of one individual for the private use or benefit of another individual or set of individuals. The right of eminent domain does not imply a right in the sovereign power to take the property of one citizen and transfer it to the use of another. Nor can such transfer be made under police powers of the Legislature. In 6 R. C. L. § 193, it is said:

"While there are no precise limits to the police power, it is not, however, without its limitation, since it may not unreasonably invade private rights, or violate those rights which are guaranteed under either federal or state Constitutions. Accordingly, it is an established principle that the constitutional guaranty of the right of property protects it, not only from confiscation by legislative edicts, but also from any unjustifiable impairment or abridgement of this right. The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without physical taking of property for public or private use. Its capability for enforcement and adaptability to some use are essential characteristics and attributes without which property cannot be conceived. Hence a law is considered as being a deprivation of property within the meaning of this constitutional guaranty if it deprives an owner of one of its essential attributes, or destroys its value, or restricts or interrupts its common, necessary or profitable use, or hampers the owner in the application of it to the purpose of trade, or imposes conditions upon the right to hold or use it, and thereby seriously impairs its value. These general principles apply not only to statutes enacted by the Legislature but to the action of executive officers generally."

From what we have said it is apparent that we have reached the conclusion that the measure of damage to which appellant could have been entitled under any phase of the case would have been only the increased damage occasioned by any repairs, or additions, or extensions, made by appellee to the levee since August 26, 1915, when the act under which this suit was brought went into effect. The court correctly so held, and sought to limit appellant with his proof thereto. Appellant apparently refused to conform to the ruling of the court, and refused to prove his damage, if any, in conformity with the measure of damage applicable in this class of cases, and therefore his sixteenth and seventeenth assignments of error present no reversible error.

[5] We are also of the opinion that as the jury found that the levee constructed by appellee did not divert the flow of the surface water onto appellant's land, and did not impound water thereon, appellant was not entitled to any damages as against appellee, and therefore all the testimony of A. B. Bradshaw and others, tending to show damages by reason of standing water on appellant's land, was immaterial and its exclusion was without injury to appellant.

The nineteenth assignment is wholly without merit and cannot be sustained.

[6] By the twentieth and twenty-first assignments appellant complains of the refusal of the court to require appellee to remove the levee constructed prior to the passage of the act of 1915, and in permitting the repair thereof.

A sufficient answer to this complaint is that the jury found on sufficient evidence that such levee did not divert surface water onto appellant's land, nor impound water thereon.

Assignment 22 has been answered by what has been said in discussing assignments 16 and 17.

By the twenty-third assignment it is insisted that the court erred in instructing the jury that in the event they should answer question No. 4 in the negative, then it would not be necessary to answer certain other questions.

The assignment is without merit. The answer of the jury to special issue No. 4 rendered it unnecessary for them to answer the other questions.

[7] The twenty-fourth assignment is as follows:

"Because the plaintiff upon information and belief charges that the jury did not fully understand question No. 4 when they answered it, or they were influenced in their answer by the fact that they took into consideration that the defendant had made 16 gaps or openings in said levee and upon the understanding that the defendant was to keep open said gaps in the future, and they answered said question No. 4, 'No.'."

This assignment is vague and indefinite and does not require consideration from us, but we think a complete answer thereto is that no predicate was laid by appellant which would have authorized or justified the court to inquire in what manner or for what reason the jury made the answer they did make to question 4. No misconduct on the part of the jury, as contemplated by article 2021, Vernon's Sayles' Texas Civil Statutes, is charged. Appellant's only complaint, based only upon information and belief, and not actual knowledge, and not sworn to, is:

"That the jury did not fully understand question No. 4 when they answered it, or they were influenced in their answer by the fact that they took into consideration that the defendant had made 16 gaps or openings in the levee."

The court correctly refused to entertain this assignment of error, because not sworn to, and correctly refused to become a court of inquiry to find out how or by what method of reasoning the jury arrived at their verdict.

Special issue No. 4 was unambiguous and could be easily understood by any juror of ordinary intelligence, and, besides, it was shown that after the charge had been submitted and the jury had retired and had deliberated for some time, they sent to the court a written question asking the court for further instructions relative to issue No. 4 submitted by the court; that the question asked, in effect, was whether by issue 4 the court meant to ask whether the levee as constructed prior to gaps being cut therein obstructed the flow of surface water, or after said gaps were cut; and that the court replied that it meant before the gaps were cut. It is shown that the foreman of the jury was called, and that he testified that to his knowledge the jury did understand the inquiry, and that the findings of the jury were based on the testimony of witnesses who stated that the natural flow of the water was away from the levee and that the levee did not affect the flow of the water in any way.

It was not error for the court to refuse to inquire of the jurors, by means of affidavits or by summoning them before it after the verdict, whether or not they correctly understood the instructions, where there was nothing in the instructions that could have misled them as to the facts inquired about. Hermann v. Schroeder, 175 S. W. 789; Farrand v. Ry. Co., 205 S. W. 848.

[8, 9] By the Eighteenth and last assignment to be considered, appellant insists that the court erred in adjudging all the costs against him, in that he did recover a part of the relief prayed for, in that the court did require appellee to destroy the 25 yards of levee, constructed by him near appellant's tenant house since the passage of the act of 1915, and did enjoin him against reconstructing same.

238 S.W.—17

We have, not without serious doubt, however, reached the conclusion that, as appelland was partially successful, in that he recovered judgment for a small portion of the relief prayed for, the court erred in adjudging the entire costs of the trial in the lower court against him. We do not think, however, that this error should cause a reversal of the judgment, as the same may be by this court reformed so as to cure the error complained of.

Appellant brought his suit and prayed: First, for an injunction commanding appellee to remove the entire levee constructed between the land of appellant and that of appellee, and also a levee constructed between the farm of one Wessels and appellee, aggregating more than 1,200 yards in length; second, that appellee be restrained from closing a gate placed upon a road leading through appellee's farm; third, for actual damages in the sum of $2,000 to $4,000; and, fourth, for punitory damages. As before shown, his recovery was for the destruction of that portion of the levee constructed in 1918, which was only 26 yards in length. We have therefore reached the conclusion that the costs of the trial court should be apportioned, and having so concluded, we here adjudge that two-thirds of such costs be adjudged against appellant and that one-third thereof be adjudged against appellee, and as thus reformed the judgment of the lower court is affirmed.

Reformed and affirmed.

### On Second Motion for Rehearing.

PLEASANTS, C. J. Appellee in a second motion for rehearing, which was filed with permission of the court, very earnestly insists that we erred in our original opinion herein in holding that, because appellant recovered a judgment in the lower court awarding him a portion of the relief prayed for, he should have recovered a portion of the costs of the court below, and having been forced to prosecute this appeal to revise the judgment of the lower court against him for all of the costs incurred in that court, all the costs of the appeal should be adjudged against appellant. The ground upon which appellee predicates error in our holding above stated is that the judgment in appellant's favor was contrary to the verdict of the jury, and the rendition of such judgment being an error apparent of record, this court should have set aside the judgment when the error was called to the attention of the court in the original motion for rehearing, and should now set it aside, notwithstanding the fact that no such objection was made to this judgment by appellee in his original brief, and the alleged conflict between the verdict and judgment was not called to the attention of the court until the motion for rehearing was presented.

[10, 11] There is no question of the soundness of the legal proposition that, if the judgment is contrary to the verdict, the error in rendering such judgment is fundamental and apparent of record, and the judgment should be set aside at any stage of the proceedings on appeal when the attention of the court is called to the error. But the majority of the court cannot agree with the appellee in the contention that the judgment in favor of appellant, requiring the appellee to remove the 25 yards of embankment or levee placed by him on and near the western end of the line between the lands of appellant and appellee, is contrary to the verdict of the jury.

As shown in our original opinion, appellant's petition first complains of the erection by defendant, during the year 1911, of a levee on the common boundary line between the land of appellant and appellee for a distance of 700 to 1,000 yards, which it is alleged obstructed the natural flow of the surface water and impounded it on appellant's land and damaged appellant in the sum of $2,000. He further pleaded that in the year 1918 appellee erected in front of and below a tenant house of appellant a levee of about 25 yards, which was an extension of the original levee and which obstructed and impounded the surface water in front of and under appellant's tenant house "to such an extent as to render the tenant house almost uninhabitable, to the great inconvenience and damage of appellant." The evidence shows that the first levee complained of in the petition was along the boundary line between the land of appellant and appellee and was erected by appellee by plowing several furrows along a fence on the boundary line and throwing the dirt from the furrows against the fence. This line did not extend beyond appellant's tenant house, which was situated at or near the western end of appellant's land. The 25 yards' extension of this levee ran in front of and beyond the tenant house. It left the line between the lands of appellant and appellee and ran at an angle from said line and was entirely on the land of appellee. It was constructed by digging a ditch and throwing the dirt on the sides of the ditch. There is ample evidence to sustain the finding that this 25-yard levee did obstruct the flow of the water and impound it under appellant's tenant house as alleged in the petition, and there is also evidence tending to show that the long levee on the boundary line obstructed the flow of surface water and impounded it on appellant's land. Appellee denied that either of these levees obstructed the natural flow of the water or caused it to become impounded on appellant's land, and the evidence offered by him was sufficient to sustain his denial of any damage to plaintiff by reason of the construction of either the original levee or the 25-yard extension.

In this state of the pleading and evidence, the trial court, among others, submitted the following special issue to the jury:

"Does the levee that was thrown up by the defendant between his land and that of plaintiff divert the natural flow of surface water over the land of plaintiff and impound water on plaintiff's land?"

To which question the jury answered, "No."

No other issue in regard to the effect of the levees constructed by appellant was submitted.

Upon the return of the verdict the court rendered a judgment denying appellant any relief as to the long levee along the boundary line, but granting the prayer for injunction against the maintenance by appellee of the 25-yard extension and ordered its removal.

No objection was made in the lower court by the appellee to this judgment, and in his briefs and argument on the original hearing in this court no contention is made that the judgment enjoining the maintenance of the 25-yard levee is contrary to the verdict. On the contrary, in reply to appellant's contention under his eighth and ninth assignments of error, which complain of the refusal of the trial court to submit the issue of the damage caused by the construction and maintenance of the 25-yard extension of the original levee, appellee presents in his brief the following counter proposition:

"Appellee admitted in his pleadings that in the fall of 1918 he extended the so-called levee at its western end about 24 yards, and in his testimony admitted that he extended it 20 or 25 yards. There was therefor no issue to be submitted to the jury on that phase of the case. The court decided this in favor of appellant, requiring the jury to only find the length of such extension, which the jury found to be 25 yards, and the court ordered same removed. Therefore there is no merit in these two assignments."

We think the charge above quoted and the finding of the jury, when read in the light of all the facts above stated, can only be construed as a finding in regard to the original levee and to in no way conflict with the finding of the court in regard to the 25-yard extension. This was the construction placed upon the verdict by the court and both the parties in the lower court, and in this court until after our decision was rendered. We prefer to follow this interpretation of the verdict rather than adopt the belated discovery of appellee's counsel that there is a conflict between the verdict and the judgment.

We think the motion for rehearing should be overruled, and it has been so ordered. Justice LANE dissents from this conclusion and will give his reason for his dissent.

Overruled.

LANE, J. (dissenting). At a former day of the present term of this court we overruled the motion of appellee for a rehearing. Since such action on the part of this court appellee has in due time presented to us his motion praying for a reconsideration of his motion for rehearing, and as the court had some doubt as to the correctness of its action in overruling the motion for rehearing, it permitted appellee to file his motion for reconsideration.

Upon consideration of said motion for reconsideration of the motion for rehearing, the majority of the court overruled same and adhered to the former order overruling the motion. From this action of the majority in overruling the motion I entered my dissent for the following reasons:

The suit of appellant was one, among other things, praying for an injunction requiring appellee Stolle to remove a certain so-called levee which he had constructed along the boundary line between his land and that of appellant. The trial court submitted to the jury its special issue No. 4, which reads as follows:

"Does the levee that was thrown up by the defendant between his land and that of plaintiff divert the natural flow of surface water over the land of plaintiff and impound water on plaintiff's land?"

To which question the jury answered, "No."

This verdict of the jury was received and approved by the court, but notwithstanding such finding of the jury the trial court rendered judgment against the defendant requiring him to remove about 25 yards of said levee, but rendered judgment against the appellant, plaintiff below, for all costs.

Upon consideration of the appeal of the plaintiff, the appellee did not raise the point that so much of the judgment of the trial court as required him to remove a part of said levee was contrary to and not authorized by the verdict of the jury until on motion for rehearing.

In our opinion we held that as the judgment of the trial court was in part against the defendant, though but for a very small part of the relief prayed for, a part of the cost of the trial court and all the costs of appeal, amounting to about $300, should be adjudged against appellee.

As before indicated, appellee has, in his motion for rehearing, and in his subsequent motion for a reconsideration of that motion, insisted that this court erred in not reforming the judgment of the trial court so as to set aside so much of the same as required appellee to remove any part of the levee, which the jury found did not divert surface water and cause it to flow upon appellant's land nor impound such water thereon; and that in so erring it further erred in adjudging any costs against appellee.

I fully concur in these contentions of appellee and think the motion for rehearing should be granted, and that judgment of the trial court should be reformed as suggested by appellee in his motion.

The finding of the jury to special issue No. 4 was a clear-cut finding that the levee thrown up by appellee did not cause surface water to flow upon or over the land of appellant, nor impound such water thereon. This finding of the jury clearly entitled appellee to a complete judgment in his favor settling all controversy as to the entire levee of which complaint was made by appellant, and therefore the court erred in requiring appellee to remove any part thereof. By article 1994 of our Civil Statutes, the trial court is required to frame its judgment so as to conform to the verdict of the jury and not contrary thereto. Holloway Seed Co. v. City National Bank, 92 Tex. 187, 47 S. W. 95, 516; Shriver v. McCann (Tex. Civ. App.) 155 S. W. at page 320; McConnell v. Payne & Winfrey (Tex. Civ. App.) 229 S. W. 355; Bonner v. City of Texarkana (Tex. Civ. App.) 227 S. W. 505; Caddell v. J. W. Watkins Medical Co. (Tex. Civ. App.) 227 S. W. 229, 230; Holmes v. Long (Tex. Civ. App.) 207 S. W. 201; Armstrong v. Hix, 107 Tex. 194, 175 S. W. 430; Claiborne v. Tanner's Heirs, 18 Tex. 68–79; Kendrick v. Polk (Tex. Civ. App.) 225 S. W. 826; Benton v. Jones (Tex. Civ. App.) 220 S. W. 193–196; First Texas State Ins. Co. v. Burwick (Tex. Civ. App.) 193 S. W. 165–167; Jackson v. Walls (Tex. Civ. App.) 187 S. W. 676, 677; Waco Cement Stone Works v. Smith (Tex. Civ. App.) 162 S. W. 1158; Kirkland v. Matthews (Tex. Civ. App.) 162 S. W. 375, 376.

In Holloway Seed Co. v. Bank, 92 Tex. 187, 47 S. W. 95, 516, Chief Justice Gaines, speaking for the Supreme Court, said:

"We will add that we hardly think the error just considered was properly assigned in the brief filed in the Court of Civil Appeals, but it was, however, made a ground of the motion for a rehearing and is assigned in this court," and held that errors in law apparent upon the face of the record which that court should have considered upon motion for rehearing without assignment would be considered by the Supreme Court. Shriver v. McCann (Tex. Civ. App.) 155 S. W. 320; McConnell v. Payne & Winfrey (Tex. Civ. App.) 229 S. W. 355.

In Peterson v. Clay (Tex. Civ. App.) 225 S. W. 1112, it is held that, where the court submits an issue to the jury, he was not warranted in making a finding thereon himself, whether the jury fully answered or not.

In Shotwell v. Crier (Tex. Civ. App.) 216 S. W. 262, it was held that notwithstanding defendant expressly admitted he owed plaintiff a certain sum so that the court did not submit that issue in his charge, it was error to enter judgment for such sum, since the judgment must follow and conform to the

verdict, and cannot exceed it, in view of our statutes.

The judgment must conform to the verdict of the jury, and therefore the trial court erred in rendering judgment against appellee contrary to the verdict of the jury in this case.

For the reasons pointed out, I think appellee's motion for rehearing should be granted.